37 F.3d 1507
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Terry PINKNEY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor GRANDY, Defendant-Appellant.
 Nos. 93-50524, 93-50536.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 6, 1994.*
Decided Oct. 3, 1994.
 
 Before: HUG, WIGGINS and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 I. United States v. Pinkney, No. 93-50524
 
 2
 Appellant Terry Pinkney ("Pinkney") appeals his sentence for conspiracy to distribute phencyclidine ("PCP") and possession of PCP with intent to distribute. Pinkney's conviction was the result of his participation in a drug distribution conspiracy headed by Derrick Bines ("Bines").
 
 A. Relevant Conduct
 
 3
 A search of Pinkney's house produced a quantity of PCP and additional chemicals used in the manufacture of PCP. A DEA chemist determined that the PCP delivered to Bines and that seized at the house totalled approximately 1.8 kilograms of pure PCP and that the least abundant precursor chemical could have been used to produce more than 46 kilograms of PCP. The Presentence Report initially suggested that the precursor chemicals be taken into account in determining Pinkney's offense level.
 
 
 4
 Pinkney argues that any determination that the precursor chemicals may be considered in sentencing as "relevant conduct" is clearly erroneous. See U.S.S.G. Sec. 1B1.3(a)(2). He apparently believes that the district court made such a determination in the course of the court's comment that the precursor chemicals were probably in Pinkney's house for some reason other than paying off Bines. The district court expressed skepticism about Pinkney's claims that he had neither the ability nor intent to produce PCP, saying that "when you start considering relevant conduct and having those precursors in your home, it leads inevitably to the conclusion that they were there for one purpose and not for the purpose of paying off some kind of imagined debt to Derrick Bines. That's where I come down on that." Pinkney argues that, under United States v. Hahn, 960 F.2d 903, 909-10 (9th Cir.1992), the chemicals do not qualify for sentencing consideration because they were not similar to the PCP and because they were not temporally proximate to the charged offense because they had been in the house for quite some time.
 
 
 5
 A district court's determination that conduct extraneous to an offense is part of the same "course of conduct" or a "common scheme or plan" as the offense of conviction so as to be "relevant conduct" within the meaning of U.S.S.G. Sec. 1B1.3(a)(2) is reviewed for clear error. Hahn, 960 F.2d at 907. We find no clear error because the district court did not treat the possession of the precursors as relevant conduct.
 
 
 6
 The government originally recommended a seven-level downward departure from the adjusted offense level of 39 (including the precursors) for the substantial assistance rendered by Pinkney. In response to Pinkney's arguments to the district court against the inclusion of the precursor chemicals, the government argued that (1) the precursor chemicals should be considered because the PCP seized did not reflect the true scale of Pinkney's offense; (2) it would not object if Pinkney wished to withdraw his guilty plea; and (3) the government would recommend only a five-level downward departure for assistance if the court decided to calculate the base offense level without reference to the chemicals.
 
 
 7
 At the sentencing hearing on July 6, 1993, the district court agreed with the government's suggestion to use the base offense level representing only the PCP and a lesser departure, but decided that it felt more comfortable sentencing in the ten-year range. The government, at the court's invitation, suggested that a downward departure of six levels would yield a lower limit of 108 months, less than ten years. The court sentenced Pinkney to 108 months. The government sought to clarify that the sentence was arrived at as follows: base offense level of 36 (actual PCP only), up two for the guns, down three for acceptance of responsibility, and down six for cooperation, giving a total offense level of 29, and a sentencing range of 108 to 135 months. The court concurred in that calculation.
 
 
 8
 Pinkney argues against a decision that was never made. The district court clearly decided to avoid the entire issue by using a base offense level that reflected only the actual PCP. We find no error in the computation of Pinkney's sentence.
 
 B. Plea Bargain
 
 9
 Pinkney argues that the district court erred in concluding that the government had not violated the plea agreement by proposing that the precursor chemicals be considered in sentencing. Pinkney argues that he entered into the plea agreement with the expectation that he would not be exposed to liability for the precursor chemicals. To this end, he points out that the agreement provided that the government would not file any additional charges relating to those chemicals. The government responds only that the letter of the agreement was upheld because no additional charges were filed.
 
 
 10
 The district court's interpretation and construction of a plea agreement is reviewed for clear error, while its application of legal principles is reviewed de novo. United States v. Floyd, 1 F.3d 867, 869 (9th Cir.1993); United States v. Fernandez, 960 F.2d 771, 772 (9th Cir.1991) (per curiam). Findings regarding the terms of a plea agreement are also subject to the clearly erroneous standard of review. United States v. Sharp, 941 F.2d 811, 816 (9th Cir.1991).
 
 
 11
 Pinkney's arguments fail. Pinkney used the argument before the district court to challenge the recommended base offense level of 40, which included the precursors. The district court obligingly did not use a base offense level of 40. On appeal, Pinkney does not clarify which decision of the court he is challenging. He insinuates that the government intended fully to sentence him for the chemicals, defeating the consideration for his cooperation. It seems clear, however, that Pinkney does not really want out of the plea agreement. He declined the government's offer to allow him to withdraw his plea. Without the departure, he would face a sentencing range the minimum of which is more than twice the sentence he actually received, or much more (up to life) if the precursor chemicals are considered. Pinkney apparently desires an even larger downward departure.
 
 
 12
 Pinkney received the substantial benefit of his plea agreement. The precursor chemicals were not separately charged, nor were they used to calculate the sentence for the actual PCP. The plea agreement creates no right to a particular recommendation for a departure. Moreover, Pinkney may not challenge on appeal the extent to which the district court does, in fact, decide to depart. United States v. Dickey, 924 F.2d 836, 838 (9th Cir.), cert. denied, 112 S.Ct. 383 (1991); United States v. Vizcarra-Angulo, 904 F.2d 22, 23 (9th Cir.1990). Therefore, Pinkney has no remediable claim to the larger departure he desires.
 
 II. United States v. Grandy, No. 93-50536
 
 13
 Appellant Victor Grandy ("Grandy"), another participant in the Bines operation, appeals his sentence for multiple counts of distribution of cocaine base ("rock" cocaine), conspiracy, and retaliation against an informant. Grandy was sentenced to life imprisonment concurrently on each of the drug counts, and 120 months for the assault on the informant.
 
 A. Statutory Sentence
 
 14
 Grandy broadly challenges the constitutionality of the imposition of a mandatory minimum sentence of life imprisonment without release because of his prior convictions for mere possession offenses. See 21 U.S.C. Sec. 841(b) (hereinafter "Sec. 841").[1] We take his arguments to allege the imposition of cruel and unusual punishment and denial of equal protection, and address these separately.
 
 1. Cruel and Unusual Punishment
 
 15
 Grandy argues that Sec. 841 imposes upon him a constitutionally excessive penalty on the basis of prior convictions for ordinary drug possession. He insists that the issue is whether the punishment fits the status of the defendant with respect to prior felonies. Grandy argues that the statutory provision for a possible life sentence based on prior drug possession charges is totally disproportionate to the defendant's prior conduct. He relies on the pronouncement of the Supreme Court in Robinson v. California, 370 U.S. 660, 667 (1962), that imprisonment would be cruel and unusual punishment for addiction.
 
 
 16
 This court reviews de novo the legality of the district court's sentence under the Eighth Amendment. United States v. Bland, 961 F.2d 123, 128 (9th Cir.), cert. denied, 113 S.Ct. 170 (1992). A defendant may only challenge the constitutionality of the statute as it is applied in his own case. United States v. Zavala-Serra, 853 F.2d 1512, 1517-18 (9th Cir.1988).
 
 
 17
 Grandy's crime was at least as serious as those in United States v. Van Winrow, 951 F.2d 1069 (9th Cir.1991), and Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991), which determined that life sentences for possession of illicit drugs with intent to distribute and possession of a significant quantity of illicit drugs, respectively, were not cruel and unusual punishment. In Harmelin, the defendant was sentenced to life for possession of less than 700 grams of powder cocaine. Grandy distributed many times that weight in rock cocaine, which, under the Sentencing Guidelines, is treated the same as powder cocaine one hundred times the weight of the rock cocaine. See U.S.S.G. Sec. 2D1.1(c)(2). Harmelin found a life sentence for an offense much less serious than that for which Grandy was convicted to be neither cruel nor unusual. We are therefore bound to conclude that Grandy's life sentence was not unconstitutionally disproportionate to his offense. Van Winrow, 951 F.2d at 1071.
 
 
 18
 Grandy's argument that Sec. 841 violates the Eighth Amendment by considering prior possession convictions is unfounded. While Robinson forbids imprisonment for addiction itself, the Court expressly observed that its decision did not undermine the validity of laws against possession of narcotics. 370 U.S. at 664. Harmelin itself involved a life sentence for drug possession. 111 S.Ct. at 2684. Grandy is left only with the argument that the marginal punishment based on the prior possession convictions is cruel and unusual, even though the total sentence would be unobjectionable if founded only on the offense of conviction. Grandy provides, and we find, no support for this creative proposition.
 
 
 19
 Grandy was convicted of serious and substantial offenses; the punishment imposed therefor by Sec. 841 was not cruel and unusual.
 
 2. Equal Protection
 
 20
 Grandy also argues that 21 U.S.C. Sec. 841 violates the Equal Protection Clause by penalizing a class of persons, defined by prior drug possession, in a manner not rationally related to the purposes of the statute. Grandy cites no affirmative support for his position, but instead is content to attempt to distinguish contrary authority, such as New York Transit Auth. v. Beazer, 440 U.S. 568, 587-94 (1979), in which the Supreme Court found that a policy against employment of methadone users was rational and therefore constitutional. Grandy also tries to distinguish United States v. Kinsey, 843 F.2d 383, 393-94 (9th Cir.), cert. denied, 487 U.S. 1223, and cert denied, 488 U.S. 836 (1988), on the ground that it only found a rational relationship between the enhanced punishment and possession of cocaine for sale, a "trafficking offense." Grandy's position is only that the enhancement is not rationally related to the predicate act of simple possession.
 
 
 21
 An equal protection challenge to a statute is reviewed de novo. United States v. Harding, 971 F.2d 410, 412 (9th Cir.1992), cert. denied, 113 S.Ct. 1025 (1993). Legislation will generally be upheld if the classification drawn by the statute is rationally related to a legitimate government interest. Id. The defendant bears the burden of disproving a rational relationship. Id. at 413.
 
 
 22
 We conclude that the statute does "bear some rational relation to a legitimate government interest or purpose." Harding, 971 F.2d at 413. Congress' intent was to impose a very severe sentence on those who, after having demonstrated a repeated tendency to violate the drug laws, traffick in large amounts of illicit drugs. "In fact, it is apparent that the mandatory minimum sentencing provisions in [Sec. 841] are rationally related to the strong governmental interest in the deterrence of drug abuse and drug trafficking." Kinsey, 843 F.2d at 394 (emphasis supplied). The enhanced sentence of Sec. 841 is a rational means to deter the progression from drug user to drug dealer, and such deterrence is a legitimate government objective. We therefore reject Grandy's argument that he may not constitutionally be subject to the mandatory minimum sentence of Sec. 841.
 
 C. Guidelines Sentence
 
 23
 The district court sentenced Grandy to a life sentence without release on all counts under the sentencing guidelines on the basis that the life sentence mandated under section 841 had to be applied as the sentence required by the guidelines. Grandy argues that he was not subject to the statutory, mandatory life sentence on several of the counts because his convictions in two of the predicate drug offenses did not become final until after the conduct for which he was convicted in the district court.[2] The legality of a sentence is reviewed de novo. United States v. Fine, 975 F.2d 596, 599 (9th Cir.1992) (en banc).
 
 
 24
 The relevant portion of Sec. 841 provides for life imprisonment without release for violations committed "after two or more prior convictions for a felony drug offense have become final...." Grandy argues that his two prior possession convictions became final only after "the availability of appeal ha[d] been exhausted and the time for petition for certiorari ha[d] lapsed." United States v. Tobin, 408 F.Supp. 760, 762-63 (W.D.Pa.), aff'd mem., 546 F.2d 420 (3d Cir.1976), cert. denied, 431 U.S. 969 (1977). Grandy states that judgment of conviction was entered in two of the prior crimes on January 22, 1991, and did not become final until sixty days later, on March 23. Because the crimes alleged in several (but not all) counts of the indictment (specifically counts 3, 4, 6, 8, and 9) occurred between July 3, 1990 and March 14, 1991, Grandy claims he is not subject to the mandatory minimum life sentence of Sec. 841 for those offenses.
 
 
 25
 The government concedes that Grandy is correct. Williams v. United States, 651 F.2d 648, 649-51 (9th Cir.1981) (holding that a prior conviction is not final for purposes of Sec. 841(b)(1)(A) until time for direct appellate review has passed). However, the government argues that the error was harmless because Grandy was nevertheless subject to the sentence of life imprisonment without release on other counts involving offenses that occurred after the finality of the prior convictions and because Grandy was subject to a life sentence under the Sentencing Guidelines. We must consider whether the district court's apparently erroneous conclusion that the statutory minimum sentence applied to all, rather than only some, of the offenses for which Grandy was convicted caused an error in his sentence.
 
 
 26
 Grandy argues that the district court's limited view of its own discretion in light of Sec. 841 caused it improperly to reject Grandy's arguments for mitigation of his sentence under the Guidelines. At points, the court did seem to believe that the sentence was totally controlled by the statute. "I think that there are things that this court simply cannot do by reason of the statutory mandates that are imposed upon it." But it is clear that the district court did sentence Grandy pursuant to the Guidelines as well as under Sec. 841. The court recognized that Grandy was "facing a statutorily mandated sentence of life imprisonment without release. And it should be noted that even if he did not face such a sentence by statute, the sentencing guidelines would also provide life imprisonment." The court also opined, "I don't dispute that as a result of what has happened here, this is a harsh sentence. I don't dispute that given the old sentencing provisions I might very well have come up with a different answer than that which is compelled by the sentencing guidelines." In the end, the court specifically found a guideline sentencing range of life and sentenced Grandy to life without release on each count under the authority of the Sentencing Reform Act of 1984, the statute authorizing the Sentencing Guidelines. The sentence imposed was that prescribed by both the statute and the guidelines.[3]
 
 
 27
 The district court's decision that Grandy's sentence was compelled by the Guidelines as well as Sec. 841 was correct. In a multiple-count case, the statutory minimum for any one count, to the extent that it equals or exceeds the maximum of the Guidelines range, is to be imposed concurrently on all other counts. With respect to sentences for multiple counts, the Guidelines direct that, "[e]xcept as otherwise provided by law (see Sec. 5G1.1(a), (b)), the sentence imposed on each other count shall be the total punishment as determined in accordance with [other Guidelines provisions.]" U.S.S.G. Sec. 5G1.2(b). The exception relevant here is U.S.S.G. Sec. 5G1.1(b), which provides that "where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." In other words, "[t]he Guidelines expressly adopt, as the Guideline minimum, any minimum sentence prescribed by statute." United States v. La Fleur, 971 F.2d 200, 208 (9th Cir.1991), cert. denied sub nom, Holm v. United States, 113 S.Ct. 1292 (1993).[4] That minimum sentence is to run concurrently for all counts. U.S.S.G. Sec. 5G1.2(c) ("If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently...."). See also La Fleur, 971 F.2d at 207-208 (holding, with respect to both single- and multiple-count convictions, that the district court had no discretion to depart downward because statutory minimum applied to murder conviction). The district court may not depart below the statutory minimum except upon a motion from the government for departure based on substantial assistance by the defendant. 18 U.S.C. Sec. 3553(e); United States v. Sharp, 883 F.2d 829, 831 (9th Cir.1989).
 
 
 28
 Grandy's arguments about errors in the district court's sentence under the Guidelines therefore fail. Sentencing entrapment is an impossibility, and Grandy's argument thereto is moot, because Grandy's liability to the statutory minimum of Sec. 841 means that additional counts had no incremental effect on his sentence. The district court's apparent error in counting Grandy's prior possession convictions separately is harmless because correcting Grandy's criminal history classification would not change his sentence. Similarly, reversal of the increase in Grandy's offense level for his role would not have any impact. Remand for correction of an error in sentencing is not required where the error did not affect the sentence. Williams v. United States, 112 S.Ct. 1112, 1121 (1992); United States v. Rodriguez-Razo, 962 F.2d 1418, 1423 (9th Cir.1992). We hold that the district court imposed the only proper sentence under the Sentencing Guidelines.
 
 III. Conclusion
 
 29
 We conclude that Pinkney has shown no error by the district court. Grandy was properly sentenced to life on all counts pursuant to 21 U.S.C. Sec. 841(b) and the Guidelines, despite possible errors in certain computations.
 
 
 30
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 841(b) of 21 U.S.C. provides, in part pertinent to Grandy's sentencing,
 "If any person commits a violation of this subparagraph [Sec. 841(b)(1)(A)(iii) deals with offenses involving more than 50 grams of a substance containing cocaine base] ... after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined...."
 21 U.S.C. Sec. 841(b).
 "Felony drug offense" means
 "an offense that is a felony under any provision of this title or any other Federal law ... or a felony under any law of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances."
 Id.
 
 
 [2]
 Grandy also argues that the plea in one of these possession convictions was constitutionally invalid due to the lack of waiver of a jury trial. People v. Sumstine, 36 Cal.3d 909, 687 P.2d 904, 206 Cal.Rptr. 707 (1984). Even if Grandy is correct, the invalidity of one of the possession charges still has the same effect as the lack of finality of the prior convictions conceded by the government and therefore will not be addressed separately
 
 
 [3]
 Grandy's offense fell within Zone D, making him ineligible for supervised release. U.S.S.G. Sec. 5C1.1(f)
 
 
 [4]
 We reject any possibility that the Guidelines intend separate sentences for counts that are not subject to statutory minima. The Guidelines consistently assume that sentences will be imposed for all related counts, taken together (with the exception of statutorily mandated consecutive sentences). This approach is intended to minimize the potential for manipulation of the sentence by changing the number of counts charged. See U.S.S.G. Sec. 1A.4(a)